## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES JOHN TISDALE, IV,** | **:** | |
| **Plaintiff** | **:** | |
| | **:** | **No. 1:19-cv-1022** |
| **v.** | **:** | |
| | **:** | **(Judge Rambo)** |
| **DR. EDWARD ZALOGA,** *et al.*, | **:** | |
| **Defendants** | **:** | |

## <u>MEMORANDUM</u>

On June 17, 2019, *pro se* Plaintiff James John Tisdale, IV ("Tisdale"), who is currently incarcerated at the Lackawanna County Prison in Scranton, Pennsylvania, initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Dr. Edward Zaloga ("Dr. Zaloga"), Anthony Ianuzzi ("Ianuzzi"), and Correctional Care Inc. ("CCI"). (Doc. No. 1.) Tisdale has also filed a motion for leave to proceed *in forma pauperis* (Doc. No. 2) and a request for the appointment of counsel (Doc. No. 4). Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] the Court will perform its mandatory screening of the complaint. For the reasons set forth below, the Court will grant Plaintiff's motion to proceed *in forma pauperis*, dismiss the complaint with leave to amend, and deny his request for counsel at this time.

---

[1] *See* The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

## I.    BACKGROUND

According to Tisdale, CCI is owned by Dr. Zaloga and has a contract to provide medical care to inmates housed at the Lackawanna County Prison. (Doc. No. 1 at 13.) In August of 2018, Tisdale began to lose feeling "in the lower half of [his] body and extremities making it almost impossible to walk or even shower." (*Id.*) He submitted a sick call request on August 9, 2018. (*Id.*) Three (3) days later, he was called to medical to see Ianuzzi. (*Id.*) According to Tisdale, Ianuzzi stated that Tisdale "wasn't numb because [he] walked in there but provided no treatment." (*Id.*) Tisdale alleges that he experienced "constant loss of balance and falling," as well as uncontrolled movements of his mouth and tongue. (*Id.* at 14.) He maintains that these symptoms were caused by the level of Dilantin in his blood "due to not being monitored by medical e.g. Dr. Edward Zaloga." (*Id.* at 15.) Tisdale maintains that on October 4, 2018, he fell in a hallway and was taken to medical, where a nurse told the corrections officers accompanying Tisdale that he "was fine" and just needed to lie down. (*Id.*) Tisdale seeks damages as relief. (*Id.* at 17.)

## II.    LEGAL STANDARD

### A.    Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). If a complaint "is

frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss the complaint. *See* 28 U.S.C. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding *in forma pauperis* and prisoners challenging prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted.").

A complaint is frivolous if it lacks an arguable basis either in law or fact. *See Mitchell v. Horn*, 381 F.3d 523, 530 (3d Cir. 2003) (citing *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989)). When deciding whether a complaint fails to state a claim on which relief may be granted, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Smithson v. Koons*, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure."); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 679; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when

reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of *pro se* prisoner litigation, a district court must be mindful that a document filed *pro se* is "to be liberally construed." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle*, 429 U.S. at 106) (internal quotation marks omitted)).

### A.   Claims Filed Pursuant to 42 U.S.C. § 1983

In order to state a viable claim under § 1983, a plaintiff must plead (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990); *Richardson v. Min Sec Cos.*, No. 3:cv-08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008).

Moreover, in order for a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Solan v. Ranck*, 326 F. App'x 97, 100 (3d Cir. 2009). Therefore, supervisors cannot be liable under § 1983 on the traditional standard of *respondeat superior*. *See Santiago*, 629 F.3d at 128. Instead, there are two theories of supervisory liability that are applicable to § 1983 claims: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

## III.  DISCUSSION

### A.  Tisdale's Complaint

As noted above, Tisdale's complaint alleges that he has been denied adequate medical care during his incarceration at the Lackawanna County Prison. Liberally interpreting his *pro se* pleading, the Court construes the complaint as alleging violations of the Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) plaintiff's objectively serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842)). The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary

medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. *Rouse*, 182 F.3d at 197.

Here, Tisdale alleges that Dr. Zaloga failed to adequately monitor the level of Dilantin in his blood, and that Ianuzzi failed to provide care despite his complaints of losing feeling in his lower body and extremities. Liberally construing the complaint, the court finds that these claims survive screening. Tisdale, however, has failed to state a claim for relief against CCI at this time. Nothing in the complaint suggests that CCI maintains a custom or policy that was responsible for violating Tisdale's constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Natale*, 318 F.3d at 583 (applying *Monell* to private company that provided healthcare services to prison). Thus, Tisdale's claims against CCI will be dismissed without prejudice at this time.

## B.    Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on

the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). Here, with respect to Tisdale's claim against CCI, it is neither clear that amendment would be futile, nor is there any basis to believe it would be inequitable. Accordingly, Tisdale will be granted leave to file an amended complaint as to his claims.

## C. Tisdale's Request for Counsel

Along with his complaint, Tisdale has submitted a request for the appointment of counsel. (Doc. No. 4.) He requests counsel because he is "permanently disabled and [does] not know the law well." (*Id.*) Although prisoners have no constitutional or statutory right to the appointment of counsel in civil cases, district courts do have broad discretionary power to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002). In *Tabron v. Grace*, the Third Circuit developed a non-exhaustive list of factors to aid district courts in determining whether to appoint counsel for such litigants. *Tabron v. Grace*, 6 F.3d 147, 155-57 (3d Cir. 1993). Such factors include the plaintiff's ability to present his case, the complexity of the legal and discovery issues in the

case, the amount of factual investigation that will be required, the necessity of expert witnesses, and whether "witness credibility is a key issue." *Id.* However, "[a]s a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." *Montgomery*, 294 F.3d at 498-99 (citing *Tabron*, 6 F.3d at 155).

At this time, none of the *Tabron* factors warrant the appointment of counsel. Tisdale has the apparent ability to litigate this action *pro se*, as he has thus far filed a legible complaint, a motion to appoint counsel, and a motion for leave to proceed *in forma pauperis*. Moreover, the legal issues are not complex. Tisdale does not suggest in his complaint or request to appoint counsel "that he presently suffers from any impediment unusual to other *pro se* litigants that appear before this Court." *Segura v. Wetzel*, Civ. No. 17-931, 2017 WL 3495184, at \*2 (M.D. Pa. Aug. 14, 2017). Therefore, at this time, the Court will decline to appoint counsel for Tisdale. However, in the event that future proceedings demonstrate the need for counsel, the Court may reconsider this matter either *sua sponte* or upon a motion properly filed by Tisdale.

## IV. CONCLUSION

For the foregoing reasons, Tisdale's motion for leave to proceed *in forma pauperis* (Doc. No. 2) will be granted and the complaint (Doc. No. 1) will be deemed filed. The complaint will be dismissed in part for failure to state a claim upon which

relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Tisdale's claims

against CCI will be dismissed without prejudice. The Court will defer service of the

complaint to permit Tisdale to file an amended complaint within thirty (30) days of

the date of the Order filed concurrently with this Memorandum. Tisdale's request

for the appointment of counsel (Doc. No. 4) will be denied without prejudice. An

appropriate Order follows.


<div style="margin-left: 40%;">

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

</div>

Dated: June 25, 2019