## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES JOHN TISDALE, IV,** | : | |
| **Plaintiff,** | : | |
| | : | **No. 1:19-cv-1022** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **DR. EDWARD ZALOGA,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

This matter is before the Court pursuant to the motion for summary judgment filed by Defendants Dr. Edward Zaloga ("Zaloga") and Anthony Ianuzzi ("Ianuzzi"). (Doc. No. 58.)  The motion is fully briefed and ripe for disposition.  For the following reasons, the Court will grant in part and conditionally deny in part the motion for summary judgment.

## I.    BACKGROUND

*Pro se* Plaintiff James John Tisdale IV ("Plaintiff"), who is currently incarcerated at the State Correctional Institution in Albion, Pennsylvania ("SCI Albion"), initiated the above-captioned action on June 17, 2019, while confined at the Lackawanna County Prison, by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Dr. Zaloga, Ianuzzi, and Correctional Care Inc. ("CCI").  (Doc. No. 1.)  Plaintiff alleges that CCI is owned by Dr. Zaloga and has a contract to provide medical care to inmates housed at the Lackawanna County Prison.  (Doc. No. 1 at 13.)  In August of 2018, Plaintiff began to lose feeling "in the lower half of

[his] body and extremities making it almost impossible to walk or even shower."
(*Id.*)  He submitted a sick call request on August 9, 2018.  (*Id.*)  Three (3) days later,
he was called to medical to see Ianuzzi.  (*Id.*)  According to Plaintiff, Ianuzzi stated
that Plaintiff "wasn't numb because [he] walked in there but provided no treatment."
(*Id.*)  Plaintiff alleges that he experienced "constant loss of balance and falling," as
well as uncontrolled movements of his mouth and tongue.  (*Id.* at 14.)  He maintains
that these symptoms were caused by the level of Dilantin in his blood "due to not
being monitored by medical e.g. Dr. Edward Zaloga."  (*Id.* at 15.)  Plaintiff avers
that on October 4, 2018, he fell in a hallway and was taken to medical, where a nurse
told the corrections officers accompanying Plaintiff that he "was fine" and just
needed to lie down.  (*Id.*)  He suggests that Defendants failed to refer him to a
neurologist or other testing.  (*Id.* at 13, 16.)  Plaintiff seeks $50,000.00 in damages
as relief.  (*Id.* at 17.)

In a Memorandum and Order dated June 25, 2019, the Court granted Plaintiff
leave to proceed *in forma pauperis*, dismissed his Eighth Amendment claims against
CCI without prejudice, and granted him leave to file an amended complaint within
thirty (30) days.  (Doc. Nos. 7, 8.)  The Court advised Plaintiff that if he did not file
an amended complaint, the Court would direct service of his original complaint upon
Defendants Dr. Zaloga and Ianuzzi.  (Doc. No. 8.)  Plaintiff did not file an amended

complaint.  Accordingly, on July 30, 2019, the Court dismissed CCI and directed the Clerk of Court to effect service of Plaintiff's complaint upon Defendants Dr. Zaloga and Ianuzzi.  (Doc. No. 10.)  Defendants Zaloga and Ianuzzi subsequently filed a motion to dismiss (Doc. No. 23), which the Court denied in a Memorandum and Order dated October 30, 2019 (Doc. Nos. 25, 26).  The Court noted that Defendants contended that Plaintiff's action was subject to dismissal for failure to file the requisite certificate of merit to maintain a medical malpractice action.  (Doc. No. 25 at 7.)  Although the Court had previously construed Plaintiff's complaint as alleging violations of his Eighth Amendment rights, a "liberal reading of [Plaintiff's] complaint [led] the Court to agree that it could be asserting medical malpractice claims pursuant to Pennsylvania state law."  (*Id.* at 7-8.)  Defendants, however, had not indicated that they had provided Plaintiff with the requisite notice before seeking dismissal of any medical malpractice claims.  (*Id.* at 10.)  The Court also denied Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claims.  (*Id.* at 14.)  The Court granted Plaintiff a thirty (30)-day extension of time to file a certificate of merit with respect to any medical malpractice claims.  (*Id.* at 15.)

Defendants filed their answer to the complaint on October 31, 2019.  (Doc. No. 28.)  Subsequently, Plaintiff filed a motion to appoint counsel.  (Doc. No. 31.) In an Order dated November 26, 2019, the Court conditionally granted Plaintiff's

3

motion and stayed all deadlines for forty-five (45) days to permit the Chair of the Federal Bar Association's Pro Bono Committee an opportunity to locate counsel to represent Plaintiff.  (Doc. No. 32.)  Plaintiff subsequently requested a thirty (30)-day extension of the stay (Doc. No. 33), which the Court granted on January 7, 2020 (Doc. No. 34).

On February 4, 2020, Defendants filed a notice pursuant to Rule 1042.7 of the Pennsylvania Rules of Civil Procedure that they intended to seek dismissal of Plaintiff's medical malpractice claims for failure to file a certificate of merit.  (Doc. No. 38.)  On February 7, 2020, Plaintiff moved for a second extension of the stay. (Doc. No. 39.)  In an Order dated February 11, 2020, the Court denied Plaintiff's motion, noting that the Chair of the Pro Bono Committee had been unsuccessful in locating counsel to represent Plaintiff.  (Doc. No. 40.)  The Court granted Plaintiff another thirty (30)-day extension to file a certificate of merit.  (*Id.*)  On February 20, 2020, Plaintiff filed a declaration regarding the certificate of merit.  (Doc. No. 41.) He indicated that his "complaint against the defendants may have been misconstrued as to medical malpractice and/or negligence.  However, this is [a claim] for deliberate indifference to my medical needs."  (*Id.* at 2.)  Plaintiff also indicated, however, that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim."  (Doc. No. 41-1.)

Defendants filed a second motion to dismiss on March 4, 2020, arguing that Plaintiff had filed a defective and noncompliant certificate of merit.  (Doc. No. 42.)  In a Memorandum and Order dated March 31, 2020, the Court denied Defendants' motion to dismiss.  (Doc. Nos. 46, 47.)  The Court noted that Plaintiff had explicitly indicated an intent to proceed only on Eighth Amendment claims against Defendants, for which Plaintiff did not require a certificate of merit.  (Doc. No. 46 at 9-10.)  Defendants filed an amended answer to the complaint on April 3, 2020.  (Doc. No. 48.)  After the parties received extensions of time to complete discovery, Defendants filed the instant motion for summary judgment on August 17, 2020.  (Doc. No. 58.)  Plaintiff received several extensions of time to respond to the motion for summary judgment and filed his response on October 16, 2020.[1]  (Doc. No. 70.)

---

[1] On November 9, 2020, the Court received a letter from Plaintiff in which he suggests that the Court has ignored the fact that he is permanently disabled from a traumatic brain injury.  (Doc. No. 73 at 2.)  He asserts that this is why he has repeatedly requested the appointment of counsel and that by failing to appoint him counsel, the Court has violated the Americans with Disabilities Act ("ADA").  (*Id.*)  However, neither the ADA nor the Rehabilitation Act apply to the federal judiciary.  *See In re Chapman*, 777 F. Supp. 2d 196, 197-98 (D. Me. 2011).  Moreover, as noted *supra*, the Court unsuccessfully attempted to locate counsel to represent Plaintiff in this matter.  Inmates have no constitutional or statutory right to the appointment of counsel in civil cases.  *See Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002).  Furthermore, the Court does "not have the authority to force counsel to accept [Plaintiff's] case on a pro bono basis."  *See Alexander v. Parks*, --- F. App'x ----, No. 20-6331, 2020 WL 6305607, at *3 (4th Cir. Oct. 28, 2020).  Finally, while the Court cannot advocate on Plaintiff's behalf, the Court provided extensions of time for the parties to complete discovery and for Plaintiff to respond to Defendants' motion for summary judgment.  Moreover, in an Order dated September 23, 2020, the Court directed the Clerk of Court to provide a new copy of the standing practice order to Plaintiff and advised Plaintiff to refer to that document when preparing his response to the motion for summary judgment.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may

not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party

opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1.  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.   STATEMENT OF MATERIAL FACTS[2]

Plaintiff was incarcerated at the Lackawanna County Prison beginning in September of 2016.   (Doc. No. 60 ¶ 1.)   He "suffers from numerous medical conditions, including epilepsy." (*Id.* ¶ 2.)   Plaintiff was prescribed Dilantin to treat his epilepsy.   (*Id.* ¶ 3.)   Plaintiff "has been noted as 'non-compliant' with respect to the administration and monitoring of the prescription for Dilantin." (*Id.* ¶ 4.)

On February 4, 2018, Plaintiff was taken to the Regional Hospital of Scranton for complaints "relating to his gait." (*Id.* ¶ 5.)   He "was diagnosed with muscle weakness and discharged." (*Id.* ¶ 6.)   On March 11, 2018, Plaintiff was taken to the Moses Taylor Hospital for gait complaints.   (*Id.* ¶ 7.)   He was discharged with a diagnosis of carpal tunnel syndrome and cercival radiculopathy.   (*Id.* ¶ 8.)

On August 9, 2018, Plaintiff submitted a sick call request, and three (3) days later, he was called to the medical department to see Defendant Ianuzzi.   (*Id.* ¶¶ 9-

---

[2] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  *See id.*  Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of material facts.  (Doc. No. 60.)  Plaintiff did not file a response to Defendants' statement of facts as required by Local Rule 56.1.  Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed.  *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

10.)  Defendant Ianuzzi "determined that [Plaintiff's] neurological complaints were unfounded."  (*Id.* ¶ 11.)  In September of 2018, Plaintiff "submitted a complaint for numbness in his extremities, which [was] again determined to be unfounded."  (*Id.* ¶ 12.)  Specifically, "there were 'no objective findings'" to support his complaints. (*Id.* ¶ 13.)

On October 3, 2018, Plaintiff "alleged that he suffered a fall, which he attributed to his problems with numbness in his extremities."  (*Id.* ¶ 14.)  Bloodwork was done on October 23, 2018, to asses the level of Dilantin in Plaintiff's system. (*Id.* ¶ 15.)  In response to the results of the bloodwork, Defendant Zaloga lowered Plaintiff's Dilantin dosage.  (*Id.* ¶ 16.)  During his deposition, Plaintiff "testified that '[t]he numbness went away once Dr. Zaloga . . . lowered [the Dilantin], the numbness went away.  It's just spotty now.'"  (*Id.* ¶ 17.)  "Altogether, throughout the months of August, September, and October of 2018, . . . the medical staff at Lackawanna County Prison intervened a total of ten (10) times to distribute medication and evaluate [Plaintiff's] medical complaints."  (*Id.* ¶ 18.)

Plaintiff has been incarcerated at SCI Albion since December 18, 2019.  (*Id.* ¶ 19.)  Throughout his time at SCI Albion, "in parallel with the clinical judgment of Defendants, the medical staff has not referred . . . Plaintiff to a neurologist."  (*Id.* ¶ 20.)  During his deposition, Plaintiff confirmed that the two (2) incidents in August

and October of 2018 were "the sum and balance" of his complaint.  (*Id.* ¶ 21.)  He also confirmed that his complaint centered upon his belief that Defendants Zaloga and Ianuzzi failed to refer him to a neurologist despite Plaintiff's requests to see one. (*Id.* ¶¶ 22-23.)

## IV.   DISCUSSION

As noted above, Plaintiff maintains that Defendants violated his rights by not providing adequate medical care.  Plaintiff's complaint, however, indicates that he was both a pretrial detainee and a convicted prisoner during the relevant time period. Pretrial detainees' claims of inadequate medical care arise under the Fourteenth Amendment, rather than the Eighth Amendment.  *See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003)*.  The Supreme Court, however, has held that the Fourteenth Amendment affords pretrial detainees protections that are "at least as great" as those afforded to convicted prisoners under the Eighth Amendment. *See id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  In the context of claims for inadequate medical care, the Third Circuit has "found no reason to apply a different standard than that set forth in *Estelle*[*v.Gamble*, 429 U.S. 97 (1976)] (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pretrial detainee is sufficient under the Fourteenth Amendment."  *See id.*

11

Accordingly, the Court will analyze Plaintiff's claimS under the framework of the Eighth Amendment. *See id.* at 582.

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at

12

842)).  Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).  Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious.  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Not every condition is a serious medical need; instead, the serous medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.*  Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *See White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

13

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10. Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Taylor v. Norris*, 36 F. App'x 228, 229 (8th Cir. 2002); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024-25 (7th Cir. 1996); *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *see also Pearson v. Prison Health Servs.*, 850 F.3d 526, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

### A.   Failure to Refer to a Neurologist

Plaintiff avers that Defendants violated his Eighth Amendment rights by failing to refer him to a neurologist for further testing when Plaintiff began having trouble with his gait. (Doc. No. 1 at 16.) Plaintiff's medical records suggest that on March 11, 2018, he was discharged from Moses Taylor Hospital with a note that he

would be "referred to [W]right [C]enter for further imagine of neck and nerve conduction studies." (Doc. No. 60-2 at 89.) During his deposition, Plaintiff testified that he was unable to get a referral appointment because he was taken back to the Lackawanna County Jail. (Doc. No. 60-1 at 10.)

The Court agrees with Defendants that Plaintiff's claim alleging that they failed to refer him to a neurologist for further testing is, at most, his disagreement with their course of treatment, which does not give rise to an Eighth Amendment claim. *See Spruill*, 372 F.3d at 235; *see also Stevens v. Zickefoose*, No. 12-3011 (RMB), 2016 WL 2726625, at *11 (D.N.J. May 10, 2016) (granting summary judgment for defendants on inmate-plaintiff's claim that they violated his Eighth Amendment rights by failing to pursue a neurological workup). The evidence of record indicates that on August 12, 2018, Plaintiff saw Defendant Ianuzzi, and Defendant Ianuzzi "determined that [Plaintiff's] neurological complaints were unfounded." (Doc. No. 60 ¶ 11.) Plaintiff's complaints were again determined to be unfounded in September of 2018 because there were "no objective findings" to support them. (*Id.* ¶¶ 12-13.) Even though a doctor at Moses Taylor Hospital recommended that Plaintiff be referred to a neurologist, Defendants' disagreement with that professional judgment is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10; *see also Johnson v. Cash*, 557 F. App'x 102, 104 (3d Cir.

2013) (noting that the failure to order additional diagnostic tests does not constitute deliberate indifference, but is, at most, medical malpractice).  Plaintiff has not cited any evidence to the Court to create a genuine issue of material fact suggesting that Defendants' failure to refer him to a neurologist constituted deliberate indifference to his medical needs.  Accordingly, the Court will grant Defendants' motion for summary judgment as to this claim.

### B.   Failure to Monitor Dilantin Levels

Defendants maintain that "Plaintiff's entire case for deliberate indifference on the part of Defendants is premised on two requests to see a Neurologist due to falls and numbness." (Doc. No. 59 at 8.)  They base this assertion on Plaintiff's responses to several questions during his deposition.  (Doc. No. 60 ¶¶ 21-23.)  This Court, however, has an obligation to liberally construe Plaintiff's *pro se* complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In his complaint, Plaintiff explicitly alleges that his symptoms were caused by Defendants not monitoring the level of Dilantin in his blood, which he avers led to him experiencing Dilantin toxicity.  (Doc. No. 1 at 15.)  The Court, therefore, construes Plaintiff's complaint as also asserting an Eighth Amendment claim based upon Defendants' alleged failure to monitor his Dilantin levels.

16

In their reply brief, Defendants maintain that they "monitored his Dilantin levels on a consistent basis, when . . . Plaintiff was compliant with their efforts to do so, and adjusted his doses in response to those levels." (Doc. No. 74 at 4.)  Plaintiff's medical records, however, suggest otherwise.  Of note, Plaintiff's medical records indicate that there were months at a time, including during the period at issue in Plaintiff's complaint, when Defendants and medical staff did not monitor Plaintiff's Dilantin levels.  (Doc. No. 60-2.)  The records note that they were unable to do so because Plaintiff was not compliant with his medication.  Defendants, however, have not submitted any affidavits or other evidence explaining why Plaintiff was not compliant and why they were unable to test his blood levels even if he was not compliant with his medication.  Without more, the Court is unable to, at this juncture, conclude that Defendants did not demonstrated deliberate indifference to Plaintiff's medical needs with respect to his claim that they failed to monitor his Dilantin levels. Accordingly, the Court will conditionally deny Defendants' motion for summary judgment with respect to this claim and direct Defendants to submit a properly supported brief regarding this claim within thirty (30) days of the date of this Memorandum and accompanying Order.  Should Defendants fail to do so, their motion for summary judgment will be deemed denied as to Plaintiff's Eighth

Amendment claim concerning monitoring of his Dilantin levels, and the above-captioned case will proceed on that claim.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 58) will be granted in part and conditionally denied in part.  The motion (Doc. No. 58) will be granted as to Plaintiff's Eighth Amendment claim concerning Defendants' failure to refer him to a neurologist.  The motion (Doc. No. 58) will be conditionally denied as to Plaintiff's Eighth Amendment claim concerning Defendants' failure to monitor his Dilantin levels.  Defendants will be directed to submit a properly supported brief regarding this claim within thirty (30) days of the date of this Memorandum and accompanying Order.  Should Defendants fail to do so, their motion for summary judgment will be deemed denied as to Plaintiff's Eighth Amendment claim concerning monitoring of his Dilantin levels, and the above-captioned case will proceed on that claim.  An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: November 18, 2020

18